## CIRCUIT COURT OF FAIRFAX COUNTY

Curtis L. King

    v.

Virginia Employment
Commission et al.

July 2, 2003

Case No. (Chancery) 183253

By Judge Arthur B. Vieregg

This case came before me for hearing on Petitioner Curtis L. King's appeal of the Virginia Employment Commission's determination that Mr. King was not eligible for unemployment benefits.

*Material Facts*

Petitioner Curtis King was employed by the Virginia Sprinkler Company ("VSC") from November 19, 2001, until July 23, 2003. On July 11, 2003, Mr. King was arrested for refusing to sign an agreement to take a polygraph test requested by his parole officer and was held without bond. On July 12, 2003, Mr. King called his employer to inform it that he was in jail and did not know when he would be released. Phone privileges were thereafter cut off for Mr. King's cell block on the 17th or 18th of July and he was unable to call his employer again to tell them that he was still incarcerated.

Mr. King did not contact his employer in any way for the next twelve days. On July 19, 2003, Virginia Sprinkler Company sent Mr. King a letter stating that his absence from work was cause for termination and asking him to

contact the company or his employment would be terminated. On July 23, 2003, Virginia Sprinkler Company sent Mr. King a letter stating that his employment had been terminated for failure to report to work and lack of notification.

Virginia Sprinkler Company's employee attendance policy states in part: "Employees must call their supervisor if they are going to be absent without prior approval as close to the regular starting time as possible. Employees are expected to explain the reason for their absence and indicate the date they expect to return to work. ... Any employee who does not report to work for three consecutive days and does not provide proper notification to VSC is considered to have resigned voluntarily. . . ."

On October 11, 2002, Deputy Commissioner Porter of the Virginia Employment Commission ("VEC" or "Commission") found that Mr. King was disqualified from unemployment because "failure to contact your employer to keep him informed of your status and your expected date of return is considered misconduct as defined above. Therefore benefits are not allowed."

Mr. King appealed this determination to an Appeals Examiner of the VEC on October 18, 2002. A hearing on the appeal was held December 31, 2002. In his December 31, 2002, decision, the Appeals Examiner concluded Mr. King "quit his job when he did not respond to the letter of July 19, or otherwise contact the employer." In explaining his decision, the Appeals Examiner explained that, even if King had encountered problems gaining access to a telephone while incarcerated, he neither made lack of telephonic access known to his probation officer nor did he ask his probation officer to make such lack of access known to his employer. The Examiner found Mr. King had resigned his position and had not demonstrated good cause to leave his employment.

The Appeals Examiner's decision was appealed to the Virginia Employment Commission on January 14, 2002, and a hearing was held on February 25, 2002. The issues before the Commission were: (1) Did the claimant leave work voluntarily without good cause as provided in § 60.2-618(1) of the Code of Virginia (1950), as amended?; and (2) Was the Claimant discharged due to misconduct in connection with work as provided in § 60.2-618(2) of the Code of Virginia (1950), as amended?

The VEC affirmed the Appeals Examiner's denial of benefits on February 28, 2003. The Commission found that:

the actual reason for the claimant's unemployment was his own voluntary choice to defy his probation officer and refuse to agree to take a polygraph test when he had reason to believe that he might be charged with a probation violation if he did not do so. It was thus reasonably foreseeable that he would be picked up on a charge that he had violated his probation and incarcerated without bond pending a hearing.

The problems the claimant had with respect to being able to call the employer after his transfer to the Fairfax County Correctional Center did not, in the opinion of the Commission, make it impossible for him to give notice of his continued absence. At the very least, he could have written a letter explaining the situation just as soon as he found out when his hearing was scheduled to take place. Inasmuch as the employer had a known rule in place by which three days of absence without notification could be considered a voluntary leaving, the Commission concludes that the claimant's separation actually was a voluntary leaving under the doctrine enunciated in *Shuler v. V.E.C.*, 9 Va. App. 147, 384 S.E.2d 122 (1989). Inasmuch as the claimant has not shown good cause for his failure to provide notice to the employer within the three days required, he should remain disqualified under this section of the code.

Although the Commission's decision could have been more clear, the last two sentences of the decision conclude that the evidence presented was sufficient to show that Mr. King left his position voluntarily or that his failure to notify Virginia Sprinkler Company of his absence constituted misconduct.

## Applicable Law

The standard of review for an appeal before this Court from a decision of the Virginia Employment Commission is limited. Virginia Code § 60.2-625(A) states "In any judicial proceedings under this chapter, the findings of the Commission as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law."

Virginia Code § 60.2-618 requires the Virginia Employment Commission to deny unemployment benefits if an individual has voluntarily left employment, or if he is found to have committed misconduct. Virginia Code § 60.2-618 provides: An individual shall be disqualified for benefits upon

separation from the last employing unit for whom he has worked thirty days or 240 hours or from any subsequent employing unit:

> 1. For any week benefits are claimed until he has performed services for an employer (i) during thirty days, whether or not such days are consecutive, or (ii) for 240 hours, and subsequently becomes totally or partially separated from such employment, if the Commission finds such individual is unemployed because he left work voluntarily without good cause.
>
> 2.a. For any week benefits are claimed until he has performed services for an employer (i) during thirty days, whether or not such days are consecutive, or (ii) for 240 hours, and subsequently becomes totally or partially separated from such employment … if the Commission finds such individual is unemployed because he has been discharged for misconduct connected with work.

The deliberate violation of a company rule reasonably designed to protect the legitimate business interests of an employer constitutes misconduct sufficient to bar recovery of unemployment benefits. *Branch v. Virginia Employment Commission*, 219 Va. 609, 611-12, 249 S.E.2d 180 (1978). Although the Virginia General Assembly has specifically equated positive drug tests and misrepresentation (or concealment) of a criminal record as misconduct sufficient to bar unemployment benefits, generally what constitutes "misconduct" has been a matter of decisional law. See, Code of Virginia § 60.2-618(2)(b).

## Decision

In its decision of February 28, 2003, the Commission denied Mr. King's petition for unemployment benefits on two grounds. First, the Commission found that the violation of the Virginia Sprinkler Company rule regarding notification to the company if the employee was to be absent without prior approval constituted misconduct as defined by Virginia Code § 60.2-618. Second, Mr. King's absence without prior approval constituted a voluntary leaving under the terms of the Virginia Sprinkler Company employment agreement.

The petitioner essentially argues that, because he was put in a position where someone else controlled his actions, his absence from work was therefore involuntary and his inability to contact his employer was not deliberate and therefore not misconduct. If Mr. King's position is taken to its logical extreme, then, if an employee were incarcerated for ten years and was only able to contact his employer on the first day of his incarceration to inform it that he was incarcerated, then the ten year absence from work without further contact would not be an involuntary leaving and failure to contact the employer would not constitute misconduct. This argument is not persuasive.

Mr. King knowingly refused to sign an agreement to take a polygraph test requested by his probation officer. This refusal led to Mr. King's being arrested for a probation violation and his subsequent incarceration. As a result of being incarcerated, Mr. King was put in a situation where his ability to contact his employer was taken out of his control. As the Commission stated in its opinion: "It was reasonably foreseeable that he would be picked up on a charge that he had violated his probation and incarcerated without bond pending a hearing." Mr. King rightfully argued in his brief and at the hearing before me that the Commission's opinion that Mr. King could have contacted his employer by other means was not supported by the record in this case. However, it was reasonably foreseeable that as a result of being incarcerated, Mr. King would be unable to keep his employer informed of his availability.

Mr. King refused to sign the agreement to take the polygraph test of his own accord, knowing that he could be incarcerated for a probation violation. His absence from work occurred as a direct result of the incarceration that arose from this refusal. Mr. King's failure to keep his employer informed of his whereabouts and his expected return date in violation of the Virginia Sprinkler Company's rule constituted misconduct as defined by *Branch, supra*.

Mr. King's actions following his incarceration do not establish that he intended to sever the employer/employee relationship. Indeed, he contacted VSC and notified it of his predicament. The Court of Appeals has held that such a constructive resignation may not be established based on language agreed to by the employee in the employment agreement when the employee's conduct is consistent with an intent to maintain employment. *Shuler v. Virginia Employment Comm'n*, 9 Va. App. 147, 151, 384 S.E.2d 122 (1989). Accordingly, I conclude that the evidence in the record is not sufficient to establish that Mr. King voluntarily left his job with the Virginia Sprinkler Company.

The evidence in the record supports the VEC's conclusion that Mr. King was guilty of misconduct related to his employment but does not establish that Mr. King voluntarily left his employment with VSC. The VEC did not err in the application of the law to the facts presented in the record. For the foregoing reasons, the decision of the Virginia Employment Commission is affirmed because of Mr. King's misconduct even though he did not intend to resign his job with VSC.